IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| T.R. OLIVER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-CV-81-WHA |
| | ) | |
| JOSE A. RODRIGUEZ, Individually; | ) | |
| JOSE DELEON ARMIJO, Individually; | ) | |
| ARMIJO BROTHERS PRODUCE, INC., | ) | |
| a Florida Corporation; ALFA MUTUAL | ) | |
| INSURANCE COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN OPPOSITION TO REMAND

COME now the Defendants, Jose A. Rodriguez, Jose Deleon Armijo and Armijo Brothers Produce, Inc., and respectfully submit this reply in opposition to Plaintiff's motion to remand.

1.   The Defendants removed this case from the Circuit Court of Barbour County, Alabama, Clayton Division, to this Court on February 6, 2008.

2.   On March 7, 2008, the Plaintiff filed a motion to remand the case solely on the ground that the Defendants supposedly failed to offer sufficient evidence in their removal petition to establish that the amount in controversy exceeds $75,000.00.  The Defendants respectfully disagree.

3.   Although the Plaintiff did not allege a specific monetary sum in his Complaint, his count for underinsured motorist benefits presupposes that he values his case at more than the Defendants' insurance liability limits.

4.   In their removal petition, Defendants made clear that they were insured under a policy of liability insurance issued by Canal Insurance Company totaling $750,000.00 for each accident.  Defendants further asserted that because

Plaintiffs' Complaint seeks <u>underinsured</u> motorist benefits from Defendant Alfa Mutual Insurance Company, Plaintiff must be seeking damages in his lawsuit in <u>excess</u> of $750,000.00.  A true and correct copy of Canal Insurance Company's motor carrier endorsement is attached hereto as Exhibit A.

5. Nowhere in Plaintiffs' motion to remand does he assert that his case is worth less than Defendants' $750,000.00 policy limits.  He certainly does not agree that his case is worth less than $75,000.00, the jurisdictional minimum.

6. In *Toole v. Chupp*, 456 F.Supp. 2d 1218, 1222 (M.D. Ala. 2006), Judge Thompson found the Defendants meet their burden of establishing that the amount in controversy exceeded $75,000.00 where, as here, the Plaintiff sought UIM benefits that were payable only after the underlying liability limits were exhausted:

> Finally, the court finds that these defendants have shown by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000.00.  This standard applies where, as here, the amount in controversy is not clear on the face of the complaint.  Although Alfa submits no depositions, the Tooles' Complaint alleges that Chupp and Bramlett are underinsured, although they are insured for a $100,000.00; Marie Toole alleges substantial bodily harm, including harm that required surgery, and will cause life-long pain and suffering; and perhaps most importantly, counsel for the Tooles acknowledged at oral argument on September 13, 2006, that he could see a jury "bring back more than $75,000.00."  It thus appears "more likely than not" that the amount in controversy is met. (internal citations omitted).

7. In the present case, Plaintiff is claiming compensatory and punitive damages for "serious personal injuries" suffered in a tractor-trailer accident.  Before removal, the case was pending in the Circuit Court of Barbour County, Alabama, Clayton Division, a venue well known for extraordinarily large Plaintiff's verdicts.  These facts, coupled with Plaintiff's efforts to seek damages in excess of

$750,000.00, are more than sufficient to show that, "more likely than not", the amount in controversy exceeds $75,000.00.

8.      However, should the Plaintiff stipulate and agree on the record that he will not ask for nor attempt to collect damages in excess of $75,000.00 against these Defendants, they will happily consent to remand.

Otherwise, based upon the foregoing, the Defendants respectfully request that this Court deny Plaintiff's motion to remand and keep jurisdiction of this action.

Respectfully submitted on this 10th day of March, 2008.

>    *s/William L. Lee, III*
>    WILLIAM L. LEE, III  (LEE007)
>    wlee3@leeandmcinish.com
>
>    *s/William W. Nichols*
>    WILLIAM W. NICHOLS       (NIC027)
>    wnichols@leeandmcinish.com

**OF COUNSEL:**
Lee & McInish, P.C.
*Attorneys for Defendants Jose A. Rodriguez, Jose Deleon Armijo and Armijo Brothers Produce, Inc.*
238 West Main Street (36301)
Post Office Box 1665
Dothan, Alabama 36302
Telephone (334) 792-4156
Facsimile (334) 794-8342

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: **Jonathon M. Horne, Esq., Courtney Reilly Potthoff, Esq., Joel P. Smith, Jr.**, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE.

Dated this the 10th day of March, 2008.

>    *s/William W. Nichols*
>    Of Counsel

*Duplicate policy certified by:* [signature] *Date:* 01/09/08

| POLICY NO. PIA0124400? | COMMON POLICY DECLARATIONS | STOCK COMPANY |

☒ **Canal Insurance Company**
☐ **Canal Indemnity Company**
P O BOX 7, GREENVILLE, SOUTH CAROLINA 29602
(864) 242-5365

**ITEM ONE:** Named Insured and Mailing Address
☒ For additional named insureds see IL 04 CW 0906
Armijo Brothers Produce Inc

P O Box 223
Mango, FL 33550

Physical Address (if different)
3322 Bennett Acres Place
Dover, FL 33527

Policy Period:
From 5/7/2007      to 5/7/2008
04:11 PM    , standard time at your mailing address shown above.

Agent of the Insured:
FAMILY INSURANCE

14020 N FLORIDA AVE
TAMPA, FL  33613
Phone #: 8139632227

General Agent:
Shelly, Middlebrooks & O'Leary, Inc.
10575 68th Avenue North Suite C/2
Seminole, FL 33772

Form of Business:  ☒ Corporation  ☐ Partnership  ☐ Limited Liability Company  ☐ Individual
                   ☐ Trust        ☐ Joint Venture ☐ Other (specify)

| BUSINESS DESCRIPTION | TRUCKING - PRIVATE |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS POLICY MAY BE SUBJECT TO AUDIT.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|                                              | PREMIUM      |
|----------------------------------------------|--------------|
| COMMERCIAL AUTOMOBILE COVERAGE PART          | $ 22,646.00  |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART   | $ 0.00       |
| COMMERCIAL INLAND MARINE COVERAGE PART       | $            |
|                                              | $            |
| TOTAL PREMIUM:                               | $ 22,646.00  |
| FL Hurricane Assessment                      | $ 226.46     |
|                                              | $            |
|                                              | $            |
|                                              | $            |
|                                              | $            |
|                                              | $ 0          |
|                                              | Surcharge 10%|

Deposit: $ _____
Premium shown is payable: $ _____ at inception and  $ _____ 1st installment and
                                                monthly installments of  $ _____

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): | IL 03 CW 0906 |

These declarations together with the Conditions, Coverage Part Declarations, Coverage Part Coverage Form(s) and any forms and endorsements complete the above numbered policy.
Countersigned Date: 5/9/2007      By: *Daniel C. O'Leary, III*
                                         Shelly, Middlebrooks & O'Leary, Inc.

IL 01 CW 0107                                                                                   Page 1 of 1

**EXHIBIT "A"**



**Copy of Image**

U.S Department of Transportation
Federal Motor Carrier Safety Administration

Form Approved: OMB NO: 2126-0008

**ENDORSEMENT FOR**
**MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to  Armijo Brothers Produce Inc    of  P O Box 223 Mango, FL 33550

Dated at  Greenville, SC    this  9th  day of  May , 20 07

Amending Policy No.  PIA01244001    Effective Date  5/7/2007

Name of Insurance Company  Canal Insurance Company

Countersigned by _____ /C. O'_____ ____
Shelly, Middlebrooks & O'Leary, Inc. *Authorized Company Representative*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "[X]", for the limits shown:

[X] This insurance is primary and the company shall not be liable for amounts in excess of $ 750,000 for each accident.
[ ] This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is (864) 242-5365.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date notice is received by the FMCSA at its office in Washington, D.C.).

### DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

---

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.
Form MCS-90 (4/2000)



Copy of Image

Copy of Image

**SCHEDULE OF LIMITS - *PUBLIC LIABILITY***

| Type of carriage | Commodity transported | Jan. 1, 1985 |
|---|---|---|
| (1) For-hire (In interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (non-hazardous)................................................................................... | $750,000 |
| (2) For-hire and Private (In interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2..3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (In interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below | $1,000,000 |
| (4) For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |
| | | |

Copy of Image